The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NOAH SAEEDY, VISHAL SHAH, TINA WILKINSON, and M.S., individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

MICROSOFT CORPORATION, a Washington Corporation,

Defendant.

No. 2:23-cv-01104-BJR

**MICROSOFT'S MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)**

NOTE ON MOTION CALENDAR: November 3, 2023

**ORAL ARGUMENT REQUESTED**

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

I.  INTRODUCTON AND SUMMARY OF ARGUMENT ...................................................... 1

II.  STATEMENT OF FACTS ............................................................................................... 2

    A.  The Edge Browser and Plaintiffs' Claims. .......................................................... 2

    B.  Microsoft's Privacy Statement............................................................................. 4

    C.  Plaintiffs' Alleged Use of Edge. .......................................................................... 5

III.  PLAINTIFFS LACK STANDING .................................................................................. 6

    A.  Plaintiffs Have Not Alleged Concrete Injury........................................................ 7

    B.  Plaintiffs Have No Recognized Reasonable Expectation of Privacy in
        Their Browsing Data............................................................................................. 7

    C.  Plaintiffs Do Not Plead Economic Injury. .......................................................... 11

IV.  PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM ..................................... 12

    A.  Plaintiffs' Federal and State Wiretapping Claims Fail to Allege Facts
        Supporting Essential Elements. .......................................................................... 12

        1.  No allegations of the interception of the contents of any
            "communication." ................................................................................... 12

        2.  No allegations of any "interception" during transmission. ..................... 13

        3.  The CIPA and WPA Claims Fail for Claim-Specific Reasons............... 14

    B.  Plaintiffs' Allegations Do Not Establish a Violation or Loss Under the
        CFAA. ................................................................................................................ 18

    C.  Plaintiffs' Constitutional and Common-Law Privacy Claims Fail. ..................... 19

        1.  Plaintiffs do not plead an intentional intrusion. ...................................... 20

        2.  Plaintiffs do not plead any objectively offensive conduct. ..................... 20

    D.  Plaintiffs' Larceny and Conversion Allegations Fail to State a Claim............... 21

    E.  Plaintiffs' State-Law Consumer Protect Claims Fail for Lack of Injury and
        Other Claim-Specific Reasons. .......................................................................... 22

        1.  No "Lost Money or Property" Under the UCL....................................... 23

MICROSOFT'S MOTION TO DISMISS - (2:23-cv-01104-BJR) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

2.      No CPA Injury. .......................................................................... 24

3.      The UCL and CPA Claims Fail for Other Claim-Specific Reasons. ....... 24

F.      Plaintiffs Fail to State Equitable Unjust Enrichment or Restitution Claims. ....... 26

V.      CONCLUSION ................................................................................................ 28

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# I.    INTRODUCTON AND SUMMARY OF ARGUMENT

Plaintiffs allege they use Microsoft's Edge web browser. They claim Edge collects users' browsing-session data, which they say Microsoft uses for its business purposes. But they do not allege Microsoft actually linked that alleged data to identifiable people. Instead, they assert that Microsoft "is able to" link specific users to their web-browsing activities if users choose to be logged into a Microsoft Account while using the Edge browser (which they need not do). But no Plaintiff alleges facts suggesting Microsoft actually linked *them* to their web-browsing activities; indeed, none even claims to have logged in to a Microsoft Account, much less to having done so while using Edge. Further, even if Microsoft associated Plaintiffs' browsing data with them, collecting online activity data, without more, is not analogous to conduct traditionally recognized as grounds for a privacy-based suit, and Microsoft's Privacy Statement dispelled any cognizable privacy expectation in this data. Plaintiffs have thus failed to show concrete injury and the Court should dismiss under Fed. R. Civ. P. 12(b)(1).

The Court should also dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The Complaint asserts a baker's dozen of state and federal claims, which fall short for various reasons. Plaintiffs have no wire-tapping claims because the data Microsoft allegedly collected are not private "communications" covered by wiretapping statutes, because Microsoft did not "intercept" anything, and because Microsoft's Privacy Statement bars the claims; they have no claim under the federal Computer Fraud and Abuse Act (CFAA) because they allege no facts showing intrusion into their computers or cognizable loss; they do not allege a protectable privacy interest, intentional and offensive intrusion, or injury sufficient to support statutory or common law privacy claims; they cannot state larceny and conversion claims because they still have their data, do not plead Microsoft's intent to "steal" it, and cannot plead other essential elements of these claims; their state-law consumer protection claims fail because, among other things, Microsoft caused no injury to their business or property; and they have no equitable claims because they conferred no benefit on Microsoft. The Court should dismiss with prejudice.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## II.    STATEMENT OF FACTS

The Complaint consists of eight paragraphs alleging facts about Plaintiffs, Compl. ¶¶ 7–10, 176–79, and another 349 paragraphs made on "information and belief," untethered to Plaintiffs' personal experience and without explaining the underlying facts.

### A.    The Edge Browser and Plaintiffs' Claims.

Edge is an internet browser that allows users to browse the internet. Compl. ¶ 18. Edge is free and, since 2015, comes installed with Microsoft's Windows operating system. *Id.* ¶¶ 18–20; 140. When browsing the internet, Edge users type information necessary for Edge to locate, access, and display webpages. Edge can see "cookies" left on users' computers by servers from visited websites. *Id.* ¶ 2. As Microsoft's Privacy Statement explains, cookies are "small text files placed on your device to store data that can be recalled by a web server in the domain that placed the cookie." Burnside Dec. Ex. A at 22.[1] Microsoft uses cookies for "storing and honoring [users'] preferences and settings, enabling [users] to sign in, providing interest-based advertising, combating fraud, [and] analyzing how [its] products perform." *Id.* at 21.

Plaintiffs assert that when hypothetical Edge users browse the web, Edge collects "a wide range of private data relating to users' internet browsing activities, internet searches, and online shopping behavior." Compl. ¶ 2. They claim the data (sometimes) can include search queries, including via integrated search bars on the visited website, *id.* ¶¶ 38, 60, 71, URLs of visited webpages, ¶¶ 44, 64, 76, and "data related to users' online shopping habits on ... retail websites," such as "the contents of the product pages they view (e.g., product reviews, product images), and the contents of their shopping carts," ¶ 83. Plaintiffs do *not* claim Microsoft sells this data. Instead, they speculate that Microsoft uses unspecified portions of data in unspecified ways to "improv[e] its software, services, and devices, and provid[e] targeted advertising." *Id.* ¶ 32.

In an effort to transform the alleged collection of routine business information into a privacy violation, Plaintiffs allege Microsoft "associate[s]" the data it allegedly collects "with

---

[1] The Complaint relies on the Privacy Statement. Compl. ¶¶ 5, 142, 144–45. The Court may "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). And when standing is questioned, "a court may consider matters outside of the pleadings," such as the Privacy Statement. *Nw. Coal. for Alts. to Pesticides v. U.S. E.P.A.*, 2012 WL 4511371, *4 (W.D. Wash. 2012).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

unique user identifiers." *Id*. ¶ 2. Plaintiffs admit that most "unique user identifiers" do *not* identify *people* but are "alphanumeric string[s]" identifying machines, browsing sessions, and so on. *Id*. ¶¶ 24, 26, 27, 28, 29. Thus, when they allege Microsoft "links or binds" data to unique user identifiers, *id*. ¶ 31, they mean the data links to an alphanumeric code, not an identified person. They allege only one purported "unique user identifier" that they claim identifies a person:  the WLS identifier. *Id*. ¶ 25. That WLS identifier allegedly allows Edge to "link the user to his search queries and identify the user," but *only* if the Edge user "logged in to his Microsoft Account" and browsed while logged in. *Id*. ¶¶ 25, 36 & n.12, 40. Only then, Plaintiffs say, is Microsoft "able to" link that specific person (as opposed to an anonymous alphanumeric code) to web-browsing data, *id*. ¶ 36. Plaintiffs thus do not allege Edge could link *them* to browsing data unless they logged into a Microsoft Account, *id*. ¶ 45, nor do they allege Edge did so.

Plaintiffs also refer to Edge's InPrivate browsing feature, seemingly arguing that the "InPrivate" label prohibits Microsoft's collection of data. *See* Compl. ¶¶ 22, 181–84. They allege Edge users can access "InPrivate" browsing by selecting it from the "Edge browser's [settings] options." *Id*. ¶ 22. Plaintiffs excerpt one InPrivate browsing disclosure, *id.*, but the full text provides as follows:  "**What InPrivate browsing doesn't do.** Hide your browsing from your school, employer, or internet service provider. Give you additional protection from tracking by default. Add additional protection to what's available in normal browsing." Burnside Dec. Ex. B.

Plaintiffs claim Microsoft fails to explain what data is collected when using InPrivate browsing. Compl. ¶ 22. But the InPrivate disclosure Plaintiffs quote shows something different. It explains *what* data is collected, *who* can see the data, *how* to control tracking, and *where* to get more information (through hyperlinks to pages showing how Edge treats InPrivate user data and how to customize privacy settings). Burnside Dec. Ex. B. One opening an InPrivate window is told that Edge "will only collect data that you have consented to providing," and that if browsing "InPrivate, the websites you've visited are never used for product improvement and are not associated with your Microsoft account. Privacy statement." *Id*.[2]

---

[2] Plaintiffs admit that with InPrivate browsing, Edge does *not* collect the purported WLS identifier—the

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**B.      Microsoft's Privacy Statement.**

The Complaint repeatedly refers to Microsoft's Privacy Statement, which tells Edge users what data Microsoft collects, what it does with the data, and what options users have. *See* Compl. ¶¶ 5, 142, 144–45. Plaintiffs quibble over whether the Privacy Statement is conspicuous enough, *id.* ¶ 5, or whether it is "immediately apparent," *id.* ¶ 336. But they do not deny that Microsoft published a public-facing document that explained to any interested user *exactly* what it did with browsing data. The Complaint contains a screenshot showing a blue hyperlink to the Privacy Statement in the Edge Software License Agreement. *Id.* ¶¶ 142, 143. Plaintiffs also refer to "current Microsoft Software License Terms" as binding, *id.* ¶ 16, and those too contain a link to the Privacy Statement. *See* Burnside Dec. Ex. C (current Windows Software License Terms). Further, if a user clicks on the settings icon in the Edge browser, the user is taken to the Edge Settings page, which contains tabs for privacy where the user can find a hyperlink to the Privacy Statement. And if the user accesses the browser option for a new InPrivate window, as Plaintiffs allege, Edge presents a link to "Settings" for Edge, which includes links to privacy settings (including linking to the Privacy Statement), "cookies," and "About Microsoft Edge," which provide additional links to the Privacy Statement. *See id.* Ex. D. Anyone opening an InPrivate browsing window from Edge's settings, Compl. ¶ 22, was presented with a hyperlink to the Privacy Statement. *See* Burnside Dec. Ex. B. The same Privacy Statement is available when browsing outside of InPrivate. *Id.* Ex. D at 3, 7.

Thus, anyone interested in Edge's privacy framework can access the Privacy Statement in many ways. The Privacy Statement explains:

> MICROSOFT EDGE:
>
> ... Microsoft collects data necessary to provide features you request in Microsoft Edge....
>
> When you sign into Microsoft Edge with your Microsoft personal account or work or school account, Microsoft Edge will store your account's privacy preferences....
>
> Microsoft Edge collects and uses data from your search activity across the web,

---

only identifier alleged to reveal a user's name. Compl. ¶¶ 36 & n.12, 40, 45, 52, 65, 72, 77, 88, 92, 96, 102, 106, 112, 116, 120, 126, 130, 134. Edge does not identify the user or link a person to their browsing.

MICROSOFT'S MOTION TO DISMISS - (2:23-cv-01104-BJR) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

including websites Microsoft does not own or operate, to improve Microsoft services …. This data may include the search query, the search results that are displayed to you, demographic information that is part of the search results, and the interaction you have with those search results, such as the links you click. *Microsoft Edge takes steps to de-identify the data it collects by removing data that identifies the person or device from which it was collected* and retains this data for one year from when it is collected. *Microsoft does not use this collected data to personalize or provide ads to you.* You can turn off the collection of this data at any time in the browser settings. …

Microsoft Edge collects required diagnostic data to solve problems and to keep Microsoft Edge up to date, secure, and operating properly. Required diagnostic data also helps us improve Microsoft Edge and Windows.…

The diagnostic data collected by Microsoft Edge is transmitted to Microsoft and is stored with one or more unique identifiers that help us recognize an individual browser installation on a device and understand the browser's service issues and use patterns.

Burnside Dec. Ex. A at 74–76 (emphasis added). Microsoft's Privacy Statement explains *what* data Edge collects, *why* it collects the data, and that the data collected does not "identif[y] the person or device from which it was collected." *Id.* at 75.

Plaintiffs do not allege Microsoft did *anything* other than what its Privacy Statement said.

## C.    Plaintiffs' Alleged Use of Edge.

All Plaintiffs allege they have "used Microsoft Edge since June of 2021." Compl. ¶¶ 7 (Saeedy), 8, (Shah), 9 (Wilkinson), 10 (M.S.). None alleges logging into a Microsoft account while using Edge, using a website's integrated search bar, or using an InPrivate window. Each Plaintiff vaguely asserts "economic injury" but alleges no facts about the injury. *Id.* Each Plaintiff alleges Microsoft "is able" to determine their browsing activities by associating data back to "unique user identifiers and cookies," but none alleges Microsoft actually associated any of their data to them specifically. *Id.* ¶¶ 176 (Saeedy), 177 (Shah), 178 (M.S.), 179 (Wilkinson).

The only differences among the Plaintiffs are their residences and Edge usage. Noah Saeedy lives in California and used Edge on his personal computer to browse on eBay and Amazon. *Id.* ¶ 7. Like Mr. Saeedy, Vishal Shah lives in California and used Edge to shop on eBay and Amazon; unlike Mr. Saeedy, however, Mr. Shah used Edge on his work computer. *Id.* ¶ 8. Tina Wilkinson, on the other hand, lives in Washington and used Edge on a school-provided computer to shop at unidentified "third party websites." *Id.* ¶ 9. Finally, M.S. is a minor living in California who used Edge to shop on Amazon and search on Google and Yahoo. *Id.* ¶ 10.

### III.    PLAINTIFFS LACK STANDING[3]

The Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies'" under Article III. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* To establish standing, Plaintiffs bear the burden of showing they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). Injury-in-fact requires plaintiffs to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339. Concrete injury may include tangible or intangible harms, so long as they "actually exist" and are "'real,' and not 'abstract.'" *Id.* at 340. A mere statutory violation, without more, is insufficient to invoke federal jurisdiction. *TransUnion*, 141 S. Ct. at 2205–06. Nor can a plaintiff rely on invasions of intangible statutory rights to establish injury; that amounts to "circular reasoning" because it "simply folds back onto a bare statutory violation, which ... cannot be the basis for standing." *Cook v. GameStop, Inc.*, 2023 WL 5529772, *3 (W.D. Pa. 2023). Where plaintiffs fail to establish concrete harm, the Court does not have subject-matter jurisdiction and must dismiss under Rule 12(b)(1). *TransUnion*, 141 S. Ct. at 2214. "[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338, n.6.

Plaintiffs plead no concrete harm. They allege no facts showing that Microsoft *could* connect them to any data, that Microsoft *did* connect them to any data, that they have any cognizable privacy interest in the data they claim Edge collected, or that they suffered any economic injury.

---

[3] In filing this Motion, Microsoft is not waiving its right to compel arbitration for any Plaintiff with an arbitration agreement. Plaintiffs' counsel refused to provide information necessary for Microsoft to determine, before filing this Motion, whether any Plaintiff agreed to individual arbitration. Microsoft reserves the right to move to compel arbitration if discovery shows any Plaintiff agreed to arbitrate.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**A.    Plaintiffs Have Not Alleged Concrete Injury.**

Plaintiffs argue that Edge can associate browsing data with an identifiable person—rather than a computer, browsing session, or website—but *only* if the Edge user "log[s] in to his Microsoft account" while using Edge. Compl. ¶ 36. Under Plaintiffs' theory, unless an Edge user logs into a Microsoft account, Edge *cannot* know the user's identity and *cannot* "bind" data to an identified person. *Id.* ¶¶ 25, 36 & n.12, 40.

But Plaintiffs do not allege they logged into any Microsoft account. As a result, nothing in the Complaint suggests Microsoft had any way to link any Plaintiff to any data. Further, even if Microsoft had the *ability* to link Plaintiffs to their internet usage data, *see id.* ¶¶ 176–79, nothing in the Complaint suggests Microsoft *actually* identified any Plaintiff, much less linked them to their browsing and search history. *Id.*

Courts "must examine the nature of the information that [defendant] allegedly intercepted and determine whether the interception of that kind of information amounts to an invasion of privacy interests that have been historically protected." *Cook*, 2023 WL 5529772, at *4. Here, Plaintiffs' "allegations do not set forth a concrete harm" because they do not set forth facts suggesting the data was used to "connect [plaintiff's] browsing activity to her" or that Microsoft "did anything to figure out who she was." *Id.* Having failed to plead any such facts personal to them, Plaintiffs have not alleged a concrete injury. That failure defeats Article III jurisdiction.

**B.    Plaintiffs Have No Recognized Reasonable Expectation of Privacy in Their Browsing Data.**

***The Data Described in the Complaint Is Not of the Type Courts Recognize as Private.***

Plaintiffs must "plead that the defendants' interception of their information amounts to 'an invasion of privacy interests that have been historically protected' to satisfy the injury-in-fact element of Article III standing." *In re Zillow Grp., Inc. Session Replay Software Litig.*, 2023 WL 5916559, *1 (W.D. Wash. 2023) (quoting *Cook*, 2023 WL 5529772, at *4). They must have a reasonable expectation of privacy to have standing to assert privacy claims, *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019), and that expectation cannot be grounded in privacy statutes, since a statutory violation standing alone cannot create standing,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Cook*, 2023 WL 5529772, at *4. "[A] plaintiff must identify the 'specific personal information she disclosed that implicates a protectable privacy interest.'" *Mikulsky v. Noom, Inc.*, 2023 WL 4567096, *5 (S.D. Cal. 2023).

Plaintiffs allege that the data at issue here involves information about typical online user behavior, such as search queries, webpages visited, and online shopping information (such as shopping carts, product images, and product reviews). But even if Microsoft collected any of this data, that still would not be analogous to any conduct "traditionally recognized as providing a basis for a lawsuit in American courts," *TransUnion LLC*, 141 S. Ct. at 2200, because browsing information is not "personal or private within the common law understanding of a privacy right," *Massie v. Gen. Motors LLC*, 2022 WL 534468, *3 (D. Del. 2022). For example, in *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, *4 (S.D. Cal. 2023), a website host collected users' "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time." The court held that collecting that data did not create "concrete harm that bears a close relationship to the substantive right of privacy (i.e., an individual's right to control information concerning his or her person)," and dismissed for lack of standing. *Id.*; *see also Ji v. Naver Corp.*, 2022 WL 4624898, *7 (N.D. Cal. 2022) ("user and device identifiers" not sufficiently pled to be "the type of information that could give rise to a privacy injury").[4]

The data Microsoft allegedly collected "is no different from what … employees would have been able to observe if [Plaintiffs] had gone into a brick-and-mortar store and began browsing the inventory." *Cook*, 2023 WL 5529772, at *5. "[Their] physical movements in the store," "pauses to look at inventory," and "picking up [products] off the shelf" resemble web browsing and search history. *Id.* Plaintiffs do not "have a reasonable expectation of privacy in

---

[4] Courts reject standing based on collection of more sensitive data than that alleged here. *See e.g. I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022) (disclosing "contact information, including one's email address, phone number, or … username" inadequate to establish Article III standing due to "insufficient fit between the loss of information alleged here and the common law privacy torts"); *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995–96 (9th Cir. 2023) (no standing due to showing "names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

this kind of public shopping behavior in the physical world," so they do not "have it in the digital world, either." *Id.* Tracking "movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store." *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021).

These decisions reflect the "[t]echnological reality" that refutes any notion that "internet users are entitled to a reasonable expectation of privacy in all internet activity." *State v. Mixton*, 250 Ariz. 282, 293–94 (2021). "[I]n this age of information sharing and inter-connectivity, '[m]ost of us understand that what we do on the [i]nternet is not completely private.'" *Id.* Given the understanding of "third-parties' widespread and pervasive collection, analysis, and sharing of detailed internet activity, including website visitation," Plaintiffs do not have a privacy interest in data showing their online activity. *Id.*; *see also United States v. Taylor*, 935 F.3d 1279, 1284 n.4 (11th Cir. 2019) (browsing internet is "traveling along the equivalent of public highways"). Plaintiffs cannot establish Article III standing based on Microsoft's alleged collection of information about their browsing history.

**_Plaintiffs' Use of a Work or School Computer Negates Any Privacy Expectation._** Even if browsing history were subject to a cognizable reasonable expectation of privacy, Plaintiffs Shah and Wilkinson could not establish a privacy interest in their use of Edge on computers admittedly owned and provided by third parties, i.e., an employer and school, respectively. Compl. ¶¶ 8–9. "[A] person does not have a reasonable expectation of privacy in an item in which he has no possessory or ownership interest." *United States v. Wong*, 334 F.3d 831, 839 (9th Cir. 2003) (no "reasonable expectation of privacy" in work laptop). Thus, "[c]ourts generally refuse to find a reasonable expectation of privacy in an employee's use of an employer's computers." *Gauntlett v. Ill. Union Ins. Co.*, 2011 WL 5191808, *9 (N.D. Cal. 2011) (collecting cases). "[T]he use of computers in the employment context carries with it social norms that effectively diminish the employee's reasonable expectation of privacy with regard to his use of his employer's computers." *TBG Ins. Servs. Corp. v. Sup. Ct.*, 96 Cal. App. 4th 443, 452 (2002).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Browsing on a computer supplied by an employer or school, as Shah and Wilkinson did, does not involve private activities sufficient to support a protectable privacy interest.

***Microsoft's Privacy Statement Confirms Plaintiffs Have No Recognized Reasonable Expectation of Privacy.*** Microsoft's disclosure that it collects specific data confirms the absence of any expectation of privacy in that data. Although Plaintiffs allege Microsoft "surreptitiously" collects activity data and "conceal[s] the extent to which this information would be intercepted, collected, and used," Compl. ¶¶ 2, 169, Microsoft's public-facing Privacy Statement actually informs users about how Microsoft may collect and use the types of data that Plaintiffs now complain about. The Privacy Statement explains that Edge uses "search queries and browsing history," including information typed "into the browser address bar," to provide users with "faster browsing and more relevant search recommendations." Burnside Dec. Ex. A at 75. Edge also "collects and uses data from your search activity across the web, including websites Microsoft does not own or operate, to improve Microsoft services," which includes "the search query, the search results that are displayed …, demographic information that is part of the search results, and the interaction [the user has] with those search results, such as the links" the user clicks. *Id.* "Microsoft Edge collects required diagnostic data to solve problems and to keep Microsoft Edge up to date, secure, and operating properly," which it "store[s] with one or more unique identifiers that help [Edge] recognize an individual browser installation on a device and understand the browser's service issues and use patterns." *Id.*

Perhaps because Microsoft's Privacy Statement dispels the alleged expectations on which their claims depend, Plaintiffs complain the Privacy Statement was not "conspicuously" presented to users. Compl. ¶ 5. But the Complaint and the documents on which it relies show that any person concerned about keeping their internet activities private (as Plaintiffs claim they were) had ample opportunity to review the Privacy Statement to see what data Microsoft collected—and how to influence that collection. Plaintiffs admit that anyone downloading Edge and accepting its Software License Terms sees a link to the Privacy Statement. *Id.* ¶¶ 142, 144. Further, any Edge user can access the Privacy Statement through the Edge Settings menu on the

MICROSOFT'S MOTION TO DISMISS - (2:23-cv-01104-BJR) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  browser. Burnside Dec. Ex. D at 3, 7. And every time an Edge user opens an "InPrivate"

2  window, the window displays a section titled "What data does Microsoft Edge collect?," which

3  explains that during InPrivate browsing, "Microsoft Edge will only collect data that you have

4  consented to providing" and that "the websites you've visited are never used for product

5  improvement and are not associated with your Microsoft account"—and directly links to the

6  Privacy Statement. *Id.* Ex. B. On similar facts, courts have found published privacy policies

7  relevant in establishing expectations. *See State v. Townsend*, 147 Wn.2d 666, 678 (2002) (where

8  "privacy policy advised … users that if they did not wish to be subjected to the risks of

9  recording, they should not use the software," user's "familiarity with [the policy] may reasonably

10  be inferred" even absent evidence plaintiff "had acquainted himself with the [applicable] privacy

11  policy").

12        No Plaintiff alleges an inability to locate the Privacy Statement or that Microsoft violated

13  its Privacy Statement. Plaintiffs fail to allege a violation of any cognizable expectation of privacy

14  in the collected data, as required to show Article III standing.

15        **C.**    **Plaintiffs Do Not Plead Economic Injury.**

16        Plaintiffs also do not plead economic injury because they fail to allege they wanted to or

17  could sell the alleged data. They assert that internet activity data constitutes sellable "property"

18  under a California law authorizing businesses to purchase "personal information" from

19  consumers. Compl. ¶¶ 159–61 (citing Cal. Civ. Code § 1798.125(b)(1)). They also allege

20  Microsoft's purported collection of the data "diminished [its] value" because Plaintiffs "cannot

21  bring their private data … to market." *Id.* ¶ 170. But Plaintiffs do not allege they had the desire

22  or ability to sell their data—which they *still possess* and can still sell if they wish—or allege

23  facts about the supposed market beyond the bare conclusion that a market exists.

24        Without providing supporting factual allegations, Plaintiffs cannot establish a concrete

25  economic injury. "[T]o proceed on an economic injury theory, data privacy plaintiffs must allege

26  the existence of a market for their data and the impairment of the ability to participate in that

27  market." *Ji*, 2022 WL 4624898, at *9. "Even assuming the existence of a market for the

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

information taken in this case, the [Complaint] is devoid of any allegations describing how the breach devalued plaintiffs' specific information … such that they are prevented from deriving economic benefit from this information in the future." *Zynga*, 600 F. Supp. 3d at 1054.

## IV.    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM

Plaintiffs' Complaint fails to state a claim because their allegations do not transcend the "speculative" and "conceivable" to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Although "a court must accept as true all of the allegations contained in a complaint" in ruling on a Rule 12(b)(6) motion, this tenet "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rule 8 requires "allegations plausibly suggesting (not merely consistent with)" a defendant's liability. *Twombly*, 550 U.S. at 557.

### A.    Plaintiffs' Federal and State Wiretapping Claims Fail to Allege Facts Supporting Essential Elements.

Plaintiffs' federal Wiretap Act (WTA), California Invasion of Privacy Act (CIPA), and Washington Privacy Act (WPA) claims all fail because Plaintiffs cannot allege Microsoft intercepted the content of any communications. To state a claim under these statutes, Plaintiffs must allege facts showing (1) communications made with third parties that (2) Microsoft intercepted (3) without consent. *See* 18 U.S.C. § 2511(1)(a); Cal. Penal Code §§ 631(1), 632(a); RCW § 9.73.010(1)(a). Plaintiffs have not pled these elements.

#### 1.    No allegations of the interception of the contents of any "communication."

The wiretap statutes impose liability only where a third party intercepts the content of a communication. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (CIPA "prohibits the unauthorized access of the contents of any communications. The 'contents' of a communication under CIPA and the federal [WTA] are the same"); *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014) (under the WTA, plaintiffs "must plausibly allege that [defendants] divulged the 'contents' of a communication"). "Contents" requires more than "record information regarding the characteristics of the message that is generated in the course of

the communication." *Id*. at 1106 (WTA).

Plaintiffs do not allege Microsoft intercepted the contents of any "communication," such as an email, webchat, text message, or phone call. Plaintiffs allege only that Microsoft "intercepted" information they entered into the Edge browser to facilitate use of the Internet generally. *E.g.*, Compl. ¶ 187 (alleging interception of "personal information, online browsing activity, key word searches, or visited URLs"), ¶ 210. But Plaintiffs necessarily input this information into Edge as instructions to guide their browsing across the Internet (i.e., to get to the Amazon, eBay, Google, or other webpages operated by those websites). Edge did not intercept any communications; it simply used the information Plaintiffs input to take them where they wanted to go on the internet. *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1361–62 (Fed. Cir. 2003). This record information is not the contents of a communication under the WTA or CIPA. *Zynga*, 750 F.3d at 1107 (webpage address is "record information" excluded "from the definition of 'contents'"); *Graham*, 533 F. Supp. 3d at 833 (dismissing CIPA claim because "IP addresses, locations, browser types, and operating systems" are "not content"). Nor is this record information a "communication" under the WPA. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1093 (N.D. Cal. 2015) (interception of URLs and search terms "may not form the basis for liability under [WPA]"); *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012) (location data not WPA communication).

### 2.    No allegations of any "interception" during transmission.

Even if the data were "communications," Plaintiffs allege no facts plausibly showing that Microsoft "intercepted" communications during transmission, i.e., in transit between two points.

Because Plaintiffs purposefully directed the alleged communications *to* Microsoft's Edge browser to surf the Internet, they cannot show interception. A party to a "communication," like Microsoft allegedly was here, cannot intercept it. *In re Google, Inc. Priv. Pol'y Litig.*, 2012 WL 6738343, *6 (N.D. Cal. 2012) (WTA claim fails because Google does not "intercept" user information on its servers; noting absence of "any authority that supports … the notion that a provider can intercept information already in its possession"); *Warden v. Kahn*, 99 Cal. App. 3d

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

805, 811 (1979) (CIPA "appl[ies] only to eavesdropping by a third party and not to recording by a participant to a conversation"); *Huong Hoang v. Amazon.com, Inc.*, 2012 WL 1088165, *5 (W.D. Wash. 2012) (no WPA claim against "intended recipients of the communication").

Further, under the WTA, CIPA, and WPA, interception must occur "during transmission," meaning before the communication reaches its intended recipient or while it "is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (applying same WTA analysis to CIPA claim); *State v. Roden*, 179 Wn.2d 893, 904 (2014) (same as to WPA). Plaintiffs make no effort to explain how interception, if any, would have occurred while the supposed communication was in transmission. *E.g.*, *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d at 1228 & n.9 (dismissing CIPA and WTA claims; "conclusory allegation that Vizio intercepted [plaintiffs'] electronic communications 'during transmission'" was supported only by "vague allegations about how Vizio's data collection occurs in 'real-time'"). Plaintiffs do not allege interception "during transmission" at all.

### 3.   The CIPA and WPA Claims Fail for Claim-Specific Reasons.

The CIPA and WPA claims also have defects specific to those claims. On these, the rule of lenity requires resolving any ambiguities "in favor of the alleged violator," Microsoft, because "we are dealing with a penal statute." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 n.3 (1979).

### a.   No allegations within Cal. Penal Code § 631(a).

Section 631(a) prohibits three types of conduct:  Clause 1 prohibits "intentional wiretapping"; Clause 2 prohibits "wilfully [sic] attempting to learn the contents or meaning of a communication"; and Clause 3 prohibits using or sharing information obtained in violation of the first two clauses, or aiding and abetting another's violation of the first two clauses. *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978). Clause 1 does not apply,[5] and Plaintiffs cannot allege a CIPA violation under Clause 2; absent a claim under Clause 2, they have no Clause 3 claim.

---

[5] Clause 1 applies only to communications over telephone or telegraph, not communications over the internet. *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135–36 (E.D. Cal. 2021); *see also Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, *4 (C.D. Cal. 2023). Plaintiffs allege no communications over the telephone or telegraph.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Clause 2, which requires that Microsoft "intentionally" or "willfully" eavesdropped on a confidential communication. Cal. Penal Code § 631(a); *see also People v. Sup. Ct. of L.A. Cnty.*, 449 P.2d 230, 238 (Cal. 1969) (requiring "purpose or desire of recording a confidential conversation" or "substantial certainty that his use of the equipment will result in the recordation of a confidential conversation"). Plaintiffs plead no facts showing Microsoft's intent, relying instead on formulaic recitations parroting the elements of the claim. *Compare* Compl. ¶ 269 ("knowingly and intentionally used … Edge browsers and receiving servers … to read, attempt to read, learn, attempt to learn, eavesdrop, record, and/or use electronic communications"), *with* Cal. Penal Code § 631(a) ("reads, or attempts to read, or to learn the contents or meaning of any message"). Such conclusory and generalized assertions are insufficient. *Iqbal*, 556 U.S. at 678. Plaintiffs do not allege any facts suggesting Microsoft knew it was collecting the contents of communications and intended to do so. These deficient allegations distinguish this case from *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, *11 (N.D. Cal. Aug. 22, 2023), where plaintiffs specifically alleged that Meta designed a product "to maximize the private information it transmits" and that it "intended to learn, and did learn, some meaning of the content in the communications."

**b.      No allegations within Cal. Penal Code § 632(a).**

Plaintiffs cannot allege a violation of section 632 because they have not plausibly alleged Microsoft eavesdropped on (1) any confidential communications with (2) intent (3) using any electronic amplifying or recording device. Cal. Penal Code § 632(a).

***No Confidential Communications.*** Section 632 covers only "confidential" communications, meaning a party must have "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P.3d 575, 576–77 (2002). "Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018); *Swarts v. Home Depot, Inc.*, 2023 WL 5615453, *8 (N.D. Cal. 2023) (same).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Here, Plaintiffs *had* to share their internet-related directions with their browser so Edge could reach the appropriate web server. They cannot claim an objectively reasonable expectation that the instructions they typed into the browser would not be shared with Edge, or that any of the information they allege they provided (unidentified search queries, URLs, shopping carts, product images, and product review) constitutes "private" communications.

***No Recording Device.*** Section 632 "applies only to the use of 'any electronic amplifying or recording device' to eavesdrop upon or record a confidential communication." *People v. Soles*, 68 Cal. App. 3d 418, 420 (1977), *disapproved of on other grounds by Ribas v. Clark*, 38 Cal. 3d 355 (1985). A "device" under CIPA is a "thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment." *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, *5 (N.D. Cal. 2017). Software is not a covered device under CIPA. *In re Google Location History*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019); *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (same). Plaintiffs' bare allegation that Microsoft used "Edge browsers and receiving servers" to record communications fails to show use of an "amplifying or recording device" for eavesdropping under CIPA. Compl. ¶ 269.

### c.       No allegations within WPA.

Plaintiffs' WPA claim fares no better. To state a WPA claim, Plaintiffs must plausibly allege that "private communication" between "two or more individuals" were "intercept[ed]" using a "device … designed to record and/or transmit" without "consent by all parties," resulting in "injury[]." RCW 9.73.030, 9.73.060. Aside from the issues discussed above, Plaintiffs fail to plead (1) any expectation of privacy, (2) "two or more individuals" affected by the purported interception, (3) use of a recording or transmission device, or (4) injury.

***No private communication.*** The WPA does not define "private" but Washington courts "have adopted the dictionary definition:  'belonging to one's self … secret …. Intended only for the persons involved (a conversation) … holding a confidential relationship to something … a secret message:  a private communication … secretly:  not open or in public.'" *State v. Roden*, 179 Wn.2d 893, 899 (2014). In determining what is private, courts "consider the subjective

intention of the parties and may also consider other factors that bear on the reasonableness of the participants' expectations, such as the duration and subject matter of the communication, the location of the communication, and the presence of potential third parties." *Id.* at 900.

Here, Edge was a part of the alleged communications. "[T]he presence of one or more third parties … means that the conversations were not private in any ordinary or usual meaning of that word." *State v. Clark*, 129 Wn.2d 211, 228 (1996). Even if Plaintiffs did not know Microsoft was a party to any communications when they entered information into Edge, Plaintiffs necessarily communicated with Microsoft to get to their destination—the third-party websites Plaintiffs sought to browse. Any intention to keep the alleged communications private would be unreasonable, as discussed above.

*No two individuals.* Plaintiffs have not identified "two or more individuals" affected by Microsoft's purported interception as required by RCW 9.73.030(1)(a). Microsoft is not an "individual" such that Plaintiffs' sharing information with Microsoft to use Edge falls within the scope of WPA. Nor do Plaintiffs identify an "individual" party to their alleged communications. Compl. ¶¶ 318–30. The WPA does not define "individual," but *Couisenau*'s holding that Microsoft is not an "individual," 992 F. Supp. 2d at 1129, is consistent with the term's plain meaning: *i.e.*, a "human being as contrasted with a social group or institution." *Individual*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/individual; *see also Roden*, 179 Wn.2d at 899 (applying dictionary definition of "private" to WPA).

*No Device.* Like Cal. Penal Code § 632(a), the WPA requires an allegation of facts showing that Microsoft intercepted communications using a "device … designed to record and/or transmit." RCW 9.73.030(1)(a). The ordinary understanding of the word "device" is something physical: "a piece of equipment." *Device*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/device. Courts thus apply the WPA only to physical devices like cell phones and computers. *See, e.g.*, *Townsend*, 147 Wn.2d at 670–71, 675 (2002) (internet chat "recorded" on recipient's computer); *State v. Christensen*, 153 Wn.2d 186, 197 (2004) ("The base unit of the cordless telephone was a device designed to transmit within the meaning of

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

[WPA]"). The reasoning of the California cases interpreting the "device" requirement of Penal Code § 632(a) applies here:  software like Edge is not a device under the WPA. *Google Location History Litig.*, 428 F. Supp. 3d at 193; *Moreno*, 2017 WL 6387764, at *5.

**No Injury.** The WPA requires showing "that a violation of [the] statute has injured [the plaintiff's] business, ... person, or ... reputation." RCW 9.73.060. Plaintiffs, however, have not alleged any property right in the allegedly collected data nor any other economic or personal injury. Courts dismiss claims premised on similarly conclusory allegations for failure to allege any cognizable injury. *Russo v. Microsoft Corp.*, 2021 WL 2688850, *3 (N.D. Cal. 2021) (statements "that [defendant] used and shared" data "far too sparse and conclusory to make the claim of personal injury plausible"); *Brinkley v. Monterey Fin. Servs., LLC*, 340 F. Supp. 3d 1036, 1044–45 (S.D. Cal. 2018) (dismissing WPA claim for lack of financial injury). Another judge in this district dismissed a WPA claim based on similar allegations that a defendant "recorded and stored" data due to the failure to allege that defendant had "actually seen the data or … attempted to access such data." *Goussev v. Toyota Motor Sales, U.S.A., Inc.*, 2022 WL 1423642, *5 (W.D. Wash. 2022) (although "Plaintiffs' concerns that their data could be accessed in the future" the "unknown future is insufficient to adequately plead injury under the WPA").

**B.      Plaintiffs' Allegations Do Not Establish a Violation or Loss Under the CFAA.**

Plaintiffs also try to shoehorn Microsoft's alleged data collection into a claim under the CFAA, a statute "enacted to prevent intentional intrusion onto someone else's computer—specifically, computer hacking." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022); *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019) (CFAA limited "to harms caused by computer intrusions[.]"). Plaintiffs conclude that Microsoft collected (unidentified) browsing and search information they provided in using Edge, Compl. ¶¶ 176-–79, but they do not (and cannot) allege that Microsoft's alleged collection was akin to "break and enter" or intruding into their computers, as required to establish a CFAA violation. *hiQ Labs*, 31 F.4th at 1196 (violative conduct must be akin to breaking and entering).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Nor do Plaintiffs allege Microsoft intentionally accessed their computers without authorization or obtained information from a "protected computer," as required by 18 U.S.C. § 1030(a)(2)(C). To "access" a computer under the CFAA, Microsoft must enter "a computer 'system itself' or a particular 'part of a computer system,' such as files, folders, or databases." *Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021). Plaintiffs do not allege Microsoft did any such thing. Compl. ¶¶ 176–79. Even if Plaintiffs could establish "access," they do not allege Microsoft "exceed[ed] authorized access" or accessed information "off limits to [it]." *Van Buren*, 141 S. Ct. at 1662 (if access authorized, CFAA imposes no liability regardless of purpose).

Finally, the CFAA limits recovery to only a narrow category of "loss" i.e., "any reasonable cost to any victim" arising out of the intrusion, such as, "the cost of responding to an offense" or "conducting a damage assessment." 18 U.S.C. § 1030(e)(11); *United Fed'n of Churches, LLC v. Johnson*, 598 F. Supp. 3d 1084, 1093–94 (W.D. Wash. 2022) (noting the CFAA's "narrow conception of 'loss'" and limitation "to harms caused by computer intrusions, not general injuries unrelated to the hacking itself"). Plaintiffs do not allege any cost to them. Their only purported loss is "a diminution in value" of their data, Compl. ¶ 168, which the Ninth Circuit held is insufficient. *Andrews*, 932 F.3d at 1262 (rejecting CFAA claim based on "lost profits" plaintiffs "might have received from commodifying the[ir] personal information"). Plaintiffs have not alleged a "loss" covered by the CFAA.

### C.      Plaintiffs' Constitutional and Common-Law Privacy Claims Fail.

Although Plaintiffs chose to input the (unspecified) data Microsoft allegedly collected while they used Edge, they bring claims for intrusion upon seclusion and invasion of privacy under California and Washington law. Compl. ¶¶ 223–38 (Cal. intrusion upon seclusion), ¶¶ 239–63 (Cal. constitutional right to privacy), ¶¶ 298–310 (Wash. invasion of privacy by intrusion). All three claims require Plaintiffs to plead facts plausibly showing intentional intrusion into a legally protectable private place in a highly offensive manner. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287–88 (2009); *Mark v. King Broad. Co.*, 27 Wn. App. 344, 355 (1980), a*ff'd sub nom. Mark v. Seattle Times*, 96 Wn.2d 473 (1981). They do not do so.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1.      **Plaintiffs do not plead an intentional intrusion.**

Both California and Washington require a deliberate or intentional privacy intrusion. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th at 287; *Fisher v. State ex rel. Dep't of Health*, 125 Wn. App. 869, 879 (2005). Plaintiffs have not pled Microsoft's intent to "intrude."

*First*, a person has "no legitimate expectation of privacy in information [one] voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979). Plaintiffs voluntarily used Edge (for free) and provided Microsoft the alleged data (such as URLs and search terms) so Microsoft could follow their instructions in browsing the Internet. *E.g.*, *Resonate*, 338 F.3d at 1361–62. Under settled law, Plaintiffs have no expectation of privacy in information they provided to Microsoft, without any intentional intrusion on Microsoft's part.

*Second*, Microsoft published, in multiple places, a Privacy Statement that said what data Microsoft would collect. Plaintiffs acknowledge the availability of the Privacy Statement, do not deny they had the opportunity to review it, and do not allege Microsoft acted in any way inconsistent with it. The Privacy Statement gives users a public roadmap to Microsoft's data collection practices and negated any inference of culpable intent to intrude on users' privacy. *Gray v. Amazon.com, Inc.*, 2023 WL 1068513, *8 (W.D. Wash. 2023) (dismissing intrusion upon seclusion claim under Washington law where Plaintiffs "were on notice of" privacy policies, even if they did not click to view or agree to those policies); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (negligent conduct causing "theft of highly personal information … does not 'approach [the] standard' of actionable conduct under the California Constitution and thus does not constitute a violation of Plaintiffs' right to privacy").

2.      **Plaintiffs do not plead any objectively offensive conduct.**

Any invasion of privacy claim under California or Washington law requires defendant to engage in conduct "highly offensive to a reasonable person." *Hernandez*, 47 Cal. 4th at 285 (2009); *Mark*, 27 Wn. App. at 355 (1980). Plaintiffs' allegations fall far short of this standard.

Plaintiffs complain of conduct in the ordinary course of an internet browser's business, i.e., alleged collection of URLs and cookie data. *E.g.*, Compl. ¶¶ 223–63, 298–310. Courts reject privacy claims premised on such routine business activities. *See In re iPhone*, 844 F. Supp. 2d at

1063 (dismissing claim premised on collection of "unique device identifier number, personal data, and geolocation information" because "disclosure does not constitute an egregious breach of social norms"); *Gonzales v. Uber Techs.*, Inc., 305 F. Supp. 3d 1078, 1092–93 (N.D. Cal. 2018) (dismissing privacy claim where plaintiff "alleg[ed] only that Uber could have obtained his home address, not that it in fact intentionally did so"), *on recon.*, 2018 WL 3068248 (N.D. Cal. 2018); *Folgelstrom v. Lamps Plus*, 195 Cal. App. 4th 986, 992 (2011) (obtaining address to mail ads is "routine commercial behavior"); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294–95 (3d Cir. 2016) (use of cookies to track children online insufficient to state invasion of privacy claim under New Jersey common law).

### D. Plaintiffs' Larceny and Conversion Allegations Fail to State a Claim.

Plaintiffs cannot state larceny or conversion claims based on Microsoft's routine (and disclosed) alleged collection of browsing information.

*California Statutory Larceny.* To state a larceny claim, Plaintiffs must plead facts plausibly showing (1) property was stolen or obtained in a manner constituting theft, (2) Microsoft knew the property was so stolen or obtained, and (3) Microsoft received or had possession of the stolen property. *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019). But Plaintiffs' internet browsing data does not constitute "property" under California law. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) ("[P]laintiffs' 'personal information' does not constitute property."); *In re iPhone.*, 844 F. Supp. 2d at 1075 (same). That resolves the larceny claim, without the need to address the nuances of Plaintiffs' pleadings.

*Conversion Under California Law.* To state a conversion claim, Plaintiffs must allege "(1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Regent All. Ltd. v. Rabizadeh*, 231 Cal. App. 4th 1177, 1181 (2014). But personal information or data is not "property" under California law, even if Plaintiffs had alleged collection of personal information or data in the first instance. *Low*, 900 F. Supp. 2d at 1030. And Plaintiffs fail to allege damages because they "fail[] to allege how [they were]

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

foreclosed from capitalizing on the value of [their] personal data or how [they were] 'deprived of the economic value of [their] personal information simply because [their] unspecified personal information was purportedly collected by a third party.'" *Id.*; *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 990 (N.D. Cal. 2015) (plaintiffs failed to allege devaluation of property interest).

This claim also fails because Microsoft did not steal anything; Plaintiffs entered information into Edge, and Plaintiffs allege Microsoft collected it, but they do not allege Microsoft did so inconsistent with its Privacy Statement, or that it collected any information that could plausibly be connected to them specifically. "It is an established principle of the law of theft that a *bona fide* belief of a right or claim to the property taken, even if mistaken, negates the element of felonious intent." *People v. Romo*, 220 Cal. App. 3d, 514, 517 (1990)).

***Conversion Under Washington Law.*** To state a Washington conversion claim, Plaintiffs must allege facts showing "(1) willful interference with chattel belonging to the plaintiff, (2) by either taking or unlawful retention, and (3) thereby depriving the owner of possession." *Burton v. City of Spokane*, 16 Wn. App. 2d 769, 773 (2021). Even assuming personal information is a chattel (and Microsoft does not concede that it collected "personal information" in the first place), their conversion claim would still fail because they have not lost possession of whatever information Microsoft allegedly acquired via Edge, so nothing has been converted. *Calence, LLC v. Dimension Data Holdings*, 2007 WL 1526349, *7 (W.D. Wash. 2007) (no claim for conversion where owner "retains originals or other copies of documents another improperly uses because the owner is not deprived of the beneficial use of the information.").

**E.    Plaintiffs' State-Law Consumer Protect Claims Fail for Lack of Injury and Other Claim-Specific Reasons.**

Plaintiffs assert claims under Washington and California consumer protection statutes. Both the UCL (California) and CPA (Washington) remedy consumers' "economic injury … caused by" an unfair business practice. *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 947 (S.D. Cal. 2016) (citing Cal. Bus. & Prof. Code § 17204); *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn. 2d 27, 57 (2009) ("Personal injuries … do not satisfy the injury requirement."). This requirement is separate from—and in addition to—Article III standing. *See,*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*e.g., Swarts v. Home Depot, Inc.*, 2023 WL 5615453, *9 (N.D. Cal. 2023).   Both claims fail

because (1) Plaintiffs do not allege any injury to business or property caused by Microsoft, and

(2) for other reasons specific to the two statutes.

### 1. No "Lost Money or Property" Under the UCL.

Statutory UCL standing requires allegations that plaintiff has "lost money or property,"

among other requirements. *Campbell v. Facebook*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014); *see*

*also Obesity Rsch. Inst.*, 165 F. Supp. 3d at 947. Plaintiffs claim to "have suffered injury-in-fact"

from "the unauthorized collection of their private data described herein, which has value in an

amount to be proven at trial" and "loss of the … property right to control the dissemination and

use of their private data." Compl. ¶¶ 293–94. But the "private data" Microsoft allegedly collected

is not property or money sufficient to support UCL injury:  personally identifiable information

(even if Plaintiffs had alleged it) is not property under the UCL. *In re Facebook Privacy Litig.*,

791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494, 494 (9th Cir. 2014).

California courts thus commonly dismiss UCL claims premised on the collection of personal

information for failure to establish "lost money or property."[6]

Plaintiffs also must plead more than an abstract "loss of the … property right to control

the dissemination and use of their private data," Compl. ¶¶ 293–94. Instead, a plaintiff "must

demonstrate some form of economic injury such as surrendering more or acquiring less in a

transaction, having a present or future property interest diminished, being deprived of money or

property, or entering into a transaction costing money or property that was unnecessary."

*Gonzales*, 305 F. Supp. 3d at 1093; *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 322, 326 (2011).

Plaintiffs plead no such injury. Although they conclude a market for their data might exist,

Compl. ¶¶ 149–58, they do not allege Microsoft sold the data, precluded *them* from selling it, or

---

[6] *See, e.g., Gonzales*, 305 F. Supp. 3d at 1093 ("sharing of names, user IDs, location and other personal information does not constitute lost money or property" under UCL), *on recon.*, 2018 WL 3068248 (N.D. Cal. 2018); *Campbell*, 77 F. Supp. 3d at 849 (rejecting "broad interpretation of 'money or property'"); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (no UCL claim based on "unlawful collection and recordation of [plaintiffs'] personal identification information" for failure to show "how such privacy violation translates into a loss of money or property"); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, *8 (N.D. Cal. 2023) (same).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

deprived them of any value. This case is thus distinguishable from others finding collection of browsing data suffices to state a UCL injury. *E.g., Brown v. Google LLC*, 2021 WL 6064009, *15 (N.D. Cal. Dec. 22, 2021) (Google previously paid for browsing histories and sold data)).[7]

### 2. No CPA Injury.

Like the UCL, the CPA requires an injury to "business or property." *Panag*, 166 Wn. 2d at 57. Plaintiffs allege they "hold a legally protected privacy interest in their private data," that Microsoft's "conduct violated [their] privacy interests," and that they "were harmed by the intrusion." Compl. ¶¶ 333, 342, 346. But an alleged privacy injury is not "an injury to 'business or property.'" *Ambach v. French*, 167 Wn.2d 167, 171–72 (2009). A cognizable injury occurs where plaintiff's "property interest or money is diminished because of the unlawful conduct." *Panag*, 166 Wn.2d at 57. "Personal injuries, as opposed to injuries to 'business or property,' are not compensable and do not satisfy the injury requirement." *Id.* Plaintiffs' alleged privacy injury is personal and does not satisfy the CPA's injury "to business or property" requirement.

CPA claims based on the release of information can proceed only when there are allegations of discrete harm to business or property caused by that release. *See, e.g.*, *Hoang*, 2012 WL 1088165, at *1, *6 (disclosure of actress's age allegedly harmed her career by lowering her chances of being cast to play younger women); *Buckley v. Santander Consumer USA, Inc.*, 2018 WL 1532671, *3 (W.D. Wash. 2018) (disclosure of personal information led to plaintiff being targeted in a fraudulent debt collection scheme and "suffer[ing] $5,000 in economic damages as a result"). Plaintiffs' CPA claim contains no such allegation.

### 3. The UCL and CPA Claims Fail for Other Claim-Specific Reasons.

Even if Plaintiffs had sufficiently alleged cognizable injuries under the UCL or CPA, these claims would still fall short for failure to allege other essential elements.

---

[7] In *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 613–15, 636 (N.D. Cal. 2021), the court found UCL standing without allegations of tangible economic loss. But *Calhoun* misstated *In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014), in which the Ninth Circuit affirmed *dismissal* of a UCL claim based on the lost "sales value of [personal] information" because "plaintiffs failed to allege that they 'lost money or property as a result of the unfair competition.'" The other cases on which *Calhoun* relied involved allegations that plaintiffs lost the benefit of their bargain—which Plaintiffs do not allege. *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2017 WL 3727318, *13 (N.D. Cal. 2017); *In re Anthem Inc. Data Breach Litig.*, 2016 WL 3029783, *14 (N.D. Cal. 2016). *Calhoun* does not control.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### a.      Plaintiffs Do Not Allege Causation for Their CPA Claim.

A cognizable CPA claim requires pleading facts that establish "damage to business or property that was caused by the unfair or deceptive act or practice." *Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 350 (2019). The CPA's causation standard requires showing that "but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 84 (2007).

Plaintiffs allege Microsoft's unfair or deceptive acts and practices "include failing to inform the user that Edge collects and intercepts the user's private data described herein, not ensuring relevant disclosures are immediately apparent, and failing to disclose the extent of the information collected, intercepted, or used, or the result of information that is collected, intercepted, or used." Compl. ¶ 336. But the Privacy Statement refutes the allegation that Microsoft failed to inform users of Edge's treatment of data:  it describes what data Microsoft collects and explains users' options. Burnside Dec. Ex. A at 74–77. That leaves only Plaintiffs' allegation that Microsoft could have made "relevant disclosures" more "immediately apparent." Compl. ¶ 336. But Plaintiffs do not allege they were unable to find "relevant disclosures" or the Privacy Statement. They do not link an allegedly deceptive act to loss of business or property.

### b.      Plaintiffs Do Not Allege Facts Showing "Trade or Commerce" Under the CPA.

To state a claim under the CPA, Plaintiffs must allege facts showing that any alleged unfair or deceptive acts or practices occurred in trade or commerce. *Indoor Billboard*, 162 Wn.2d at 84. "Trade" or "commerce" is "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). Plaintiffs do not allege Microsoft sells their data and do not otherwise allege facts showing trade or commerce through the use of Microsoft's free browser, which is fatal to their CPA claims. *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1254 (W.D. Wash. 2007) (dismissing CPA claim because nothing sold on website that allegedly inaccurately portrayed plaintiff).

### c.      Plaintiffs Have Not Alleged a Predicate Act or Available Remedy under the UCL.

The UCL requires a predicate "unlawful" or "unfair" violation to survive a motion to dismiss. *Hammerling v. Google LLC*, 2022 WL 17365255, *12 (N.D. Cal. 2022). The UCL's

MICROSOFT'S MOTION TO DISMISS - (2:23-cv-01104-BJR) - 25

1  "unlawful" prong requires showing a predicate legal violation. *E.g. Obesity Rsch. Inst., LLC v.*

2  *Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 953 (S.D. Cal. 2016). Plaintiffs try to satisfy this

3  requirement by asserting predicate claims for violations of the WTA, CFAA, invasion of privacy,

4  larceny, or conversion. Compl. ¶ 291. But as explained above, Plaintiffs have not sufficiently

5  pled these claims. "When a statutory claim fails," as these do, the "derivative UCL claim also

6  fails." *Obesity Rsch. Inst.*, 165 F. Supp. 3d at 953; *Hammerling*, 2022 WL 17365255, at *12.

7  Plaintiffs allege Microsoft engaged in "unfair" conduct by violating their privacy rights.

8  Compl. ¶ 292. But the "unfair" prong also fails because Plaintiffs had no cognizable reasonable

9  expectation of privacy, as discussed above. *Hammerling*, 2022 WL 17365255, at *12 (dismissing

10  claim under "unfair" prong premised on "collection of consumer data without consent").

11  ### F.    Plaintiffs Fail to State Equitable Unjust Enrichment or Restitution Claims.

12  Although Plaintiffs purport to assert a claim for unjust enrichment, "there is not a

13  standalone cause of action for 'unjust enrichment'" in California. *Astiana v. Hain Celestial Grp.,*

14  *Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Even if there were, Plaintiffs have not sufficiently

15  alleged the three required elements to allege unjust enrichment in either Washington or

16  California:  (1) that Microsoft received a benefit, (2) at Plaintiffs' expense, and (3) under

17  circumstances making it unjust for Microsoft to retain the benefit without payment. *Cousineau*,

18  992 F. Supp. 2d at 1129 (citing *Young v. Young*, 164 Wn.2d 477, 483–85 (2008)) (Washington

19  law); *Haas v. Travelex Ins. Servs. Inc.*, 555 F. Supp. 3d 970, 981 (C.D. Cal. 2021) (California

20  law). Plaintiffs allege they "conferred substantial benefits on" Microsoft through  "collection and

21  use" of browsing and search history. Compl. ¶ 352. That is insufficient for three reasons:

22  *First*, Plaintiffs have not pled facts showing "that [Microsoft] has unjustly retained a

23  benefit at Plaintiffs' expense" because they do not allege that Microsoft used *their* specific data.

24  *Katz-Lacabe*, 2023 WL 2838118, at *10; *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d

25  975, 994-95 (W.D. Wash. 2022). Nor do Plaintiffs allege "suffer[ing] any alleged pecuniary

26  consequences that could be characterized as an 'expense' to them." *Street v. Amazon.com Servs.*

27  *LLC*, 2022 WL 3683811, *5 (W.D. Wash. 2022) (dismissing unjust enrichment claim). Misuse

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

of data (even if that were alleged) cannot support unjust enrichment because the claim does not apply "outside the context of an 'expense' stemming from some tangible economic loss to a plaintiff." *Cousineau*, 992 F. Supp. 2d at 1129–30 (dismissing unjust enrichment claim based on Microsoft's use of location data); *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) ("[c]ourts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value").

*Second*, Plaintiffs do not allege any specific value in their data. Plaintiffs speculate that a market for personal data is developing, Compl. ¶¶ 147–58, and that they believe selling personal data without authorization diminishes data's value, *id*. ¶ 157. But they do not plausibly allege (1) there is a market for *their* private data at issue in this case, and (2) they intended to participate in that market. *See, e.g., Moore v. Centrelake Med. Grp., Inc*., 83 Cal. App. 5th 515, 538 (2022) (rejecting a "lost-value-of-PII theory" because plaintiffs "did not allege they ever attempted or intended to participate in this market" for data). Nor do Plaintiffs allege facts showing Microsoft has any data linking the Plaintiffs' names or personal identities to their browsing history, such that there is any data worth selling for that reason. Plaintiffs do not tie their allegations of a broader marketplace for social security numbers or financial information, Compl. ¶¶ 147–58, or to a marketplace for the types of data they claim Microsoft collected, i.e., internet browsing history, search activity, and shopping behavior untethered to any Plaintiff, *id*. ¶ 23. Nor do Plaintiffs allege they intended to use this hypothetical marketplace to monetize their data—which would have been an implausible allegation for them to make, since they allege the mere act of collecting the data already is "highly offensive." *Id.* ¶¶ 232, 255–56, 305, 342–43.

*Third*, unjust enrichment is an equitable remedy available only when a plaintiff lacks an adequate remedy at law. Where, as here, Plaintiffs allege multiple statutory remedies, "they are not entitled to pursue a remedy in equity" for unjust enrichment. *Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co*., 139 Wn.2d 824, 838–39 (2000) (employees who "had a cause of action under chapter 49.52 RCW" could not pursue equitable claim for restitution/unjust enrichment).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# V.   CONCLUSION

Microsoft respectfully requests that the Court dismiss Plaintiffs' Complaint for lack of Article III standing, or in the alternative, for failure to state a claim.[8]

**Conferral:**  Microsoft's counsel met and conferred with Plaintiffs' counsel on September 20, 2023, during which they discussed the substance of this motion. Plaintiffs declined to consent to the requested relief.

DATED this 29th day of September, 2023.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Microsoft Corporation*

By: s/    Fred B. Burnside
    Stephen M. Rummage, WSBA #11168
    Fred B. Burnside, WSBA #32491
    Jaime Drozd, WSBA #35742
    Xiang Li, WSBA #52306
    Caleah Whitten, WSBA #60209
Email:  stephenrummage@dwt.com
       fredburnside@dwt.com
       jaimedrozd@dwt.com
       xiangli@dwt.com
       caleahwhitten@dwt.com

James Moon, *pro hac vice*
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Facsimile: (213) 633-6899
Email:  jamesmoon@dwt.com

---

[8] The Court should strike Plaintiffs' request for punitive damages for certain claims under California and Washington laws. "Washington prohibits punitive damages as a matter of public policy unless expressly allowed by statute," and the CPA does not permit punitive damages. *Pac. 5000, L.L.C. v. Kitsap Bank*, 22 Wn. App. 2d 334, 348 (2022). Similarly, California allows punitive damages only "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a); *Brown v. Food for Life Baking Co.*, 2023 WL 2637407, *7 (N.D. Cal. 2023) (setting forth pleading requirements). Plaintiffs do not make allegations remotely sufficient for this remedy. *Id.* (dismissing punitive damages claims because of a lack of allegations identifying a specific individual); *R.N. by & through Neff v. Travis Unified Sch. Dist.*, 599 F. Supp. 3d 973, 982 (E.D. Cal. 2022) (dismissing punitive damage claim because plaintiffs did not plead "specific acts supporting their claim[s]"); *Shin v. ICON Found.*, 553 F. Supp. 3d 724, 736 (N.D. Cal. 2021) (dismissing "conclusory" punitive damages claims).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax