The Honorable Barbara J. Rothstein

1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
9

10  NOAH SAEEDY, VISHAL SHAH, TINA
WILKINSON, and M.S., individually, and on
behalf of all others similarly situated,

No. 2:23-cv-01104-BJR

11
Plaintiffs,

**MICROSOFT'S REPLY IN
SUPPORT OF MOTION TO
DISMISS UNDER RULES
12(b)(1) AND 12(b)(6)**

12
v.
13
MICROSOFT CORPORATION, a Washington
Corporation,
14

15
Defendant.
16
17
18
19
20
21
22
23
24
25
26
27

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:23-cv-01104-BJR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Although Plaintiffs assert Microsoft invaded their privacy when they used Microsoft Edge to browse the Internet, Compl. ¶¶ 176–79, they do not dispute that Microsoft cannot personally identify or connect browsing history to any Plaintiff, when no Plaintiff alleges using Edge while "logged in to [a] Microsoft Account," *see id.* ¶¶ 25, 36 & n.12, 40; Mot. 2. Based on these concessions, Plaintiffs cannot allege a cognizable privacy injury under Article III. Plaintiffs respond by retreating to a new theory that Microsoft injured them by using their browsing data to target advertising. But they do not allege they ever *saw* any targeted ads and do not explain how seeing targeted ads (as distinct from non-targeted ads) could injure them. Nor do they deny they could have opted out from receiving any targeted advertising, as disclosed by Microsoft's Privacy Statement. Burnside Decl. Ex. A at 17, 19-20, 48-49, 76 ("How to access and control your personal data" section, explaining users may opt out of personalized advertising and providing a hyperlink to do so). And while Plaintiffs complain about the Privacy Statement, they nowhere deny having opportunities to review it or that it disclosed the collection and advertising practices they now challenge, defeating any cognizable expectation of privacy. Plaintiffs also cannot proceed on their economic injury theory because they do not allege facts showing how Microsoft's conduct impaired the sale of their data. Plaintiffs have not satisfied Article III.

If the Court nevertheless were to find standing, it should dismiss under Rule 12(b)(6) because Plaintiffs fail to adequately plead essential elements of their claims, as discussed below.

## I.   PLAINTIFFS LACK STANDING

### A.   Plaintiffs Fail to Plead a Protectable Privacy Interest.

Under Plaintiffs' theory, Edge *cannot* know the user's identity *unless* the user is logged into a Microsoft Account. Mot. 3, 7. Plaintiffs allege Edge collects *browsing* information, not *personally identifiable* information. *Compare* Compl. ¶ 23; *with Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (PII is information that can be used "readily" to "identify a specific individual"). Plaintiffs admit Edge can personally identify only a user who "is either already logged in to his Microsoft Account or logs in to his Microsoft Account." Compl. ¶ 36. But they do *not* allege they logged into a Microsoft Account when using Edge, Mot. 3, 7, negating the

unsupported assertion that Edge collected their "personally identifiable information." Opp. 9.

Plaintiffs admit as much when they acknowledge they use the term "unique user identifier" akin to a "license plate to a car." Opp. 1. A license plate may identify a car, but without more, it cannot be used to identify the individual driving the car at a given moment. Further, Plaintiffs' allegations even fall short of this analogy. Unlike a license plate, the alphanumeric identifier Microsoft assigns to a particular device or browsing session is not known outside of Microsoft. Compl. ¶¶ 23-28. And, under Plaintiffs' allegations, the "license plate" changes every time the car is driven. *See id.* ¶¶ 36 & n.12, 40 (describing identifiers linked to a particular "web-browsing session").[1] In *Eichenberger*, the Ninth Circuit held that disclosure of (1) serial numbers identifying a particular user's *device* with (2) the videos watched on that device did not reveal the user's "personally identifiable information." 876 F.3d at 985. That reasoning applies here, where Plaintiffs allege, at most, that Microsoft collected browsing history *without* information that could personally identify them.

Courts around the country find that, under these circumstances, a plaintiff fails to satisfy Article III because "[n]othing [purportedly collected] could connect [plaintiff's] browsing activity to *her*." *Cook v. GameStop, Inc.*, 2023 WL 5529772, *4 (W.D. Pa. 2023); *see Massie v. Gen. Motors LLC*, 2022 WL 534468, *5 (D. Del. 2022) ("Plaintiffs fail to explain how … possession of anonymized, non-personal data regarding their browsing activities … harms their privacy interests"); *Low v. LinkedIn Corp.*, 2011 WL 5509848, *3 (N.D. Cal. 2011). Just last week, a court in this district found *Cook* "instructive" and reached the same conclusion on similar allegations, *Popa v. PSP Grp., LLC*, 2023 WL 7001456, *3–5 (W.D. Wash. 2023). Browsing history "reveals nothing more than the products that interested [plaintiff] and thus is not the type of private information that the law has historically protected." *Id.* at *4. The Court distinguished *In re Facebook* on the grounds the plaintiff did not allege that her "personally identifiable information … was captured by Defendants, or that Defendants were able to connect the information [] collected to her identity." *Id.* at *5. Similarly, here, Plaintiffs do not allege

---

[1] Allegations concerning the "WLS" identifier are irrelevant because they apply only to Edge users "logged in to his Microsoft Account," which Plaintiffs do not allege they were. Mot. 3; *see also* Compl. ¶¶ 36, 40.

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:23-cv-01104-BJR) - 2

Microsoft collected "personally identifiable information" from any one of them, or that it was able to "connect the information [] collected" to their identities and so, do not allege invasion of a protectable privacy interest. *Id.*

Plaintiffs rely on *Sanchez v. Los Angeles Dep't of Transportation*, Opp. 13, but that case supports Microsoft. 39 F.4th 548, 559 (9th Cir. 2022). The Ninth Circuit found Article III standing there because plaintiff alleged a "valid Fourth Amendment claim," but held plaintiff did *not* have a reasonable expectation of privacy over his e-scooter use and location data collected by the e-scooter operator despite allegations that the data could be used to "retrace a rider's whereabouts." *Id.* at 553. The court reasoned that the "nature of [] location data indicates a diminished expectation of privacy" because the data does *not* "directly identify[] the rider of a particular vehicle." *Id.* at 560, 553. Although plaintiff alleged location data of a particular scooter *could* be combined with non-location information to "easily" associate a given ride with a particular individual, the court rejected this argument because plaintiff "admits that the [location] data cannot be linked to a particular individual without more" and "there is no allegation that the [location] data was in fact used to infer the identity of any individual rider." *Id.* at 560. Similarly, although Plaintiffs allege Microsoft collected online "location data" via browsing history, they do not allege Microsoft collected data that allowed it to personally identify any Plaintiff. *Sanchez* underscores that Plaintiffs did not suffer any cognizable privacy injury here.

As a result, Plaintiffs pivot to a new theory of privacy injury purportedly arising from "targeted and personalized advertising … regardless of whether [Microsoft] knows the [user's] name." Opp. 10. But Plaintiffs do not allege they saw targeted ads based on their browsing history, do not explain how seeing targeted ads could injure them, and do not deny that they could have chosen to not receive any targeted advertising by opting out (as explained in the Privacy Statement, where Microsoft provides a hyperlink to an opt out page under the "How to access and control your personal data" section). Burnside Decl. Ex. A at 17, 19-20, 48-49, 76.

Plaintiffs' cases for this new theory are also distinguishable. First, many predate *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), which requires courts to "examine the

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:23-cv-01104-BJR) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   nature of the information" to determine whether its interception "amounts to an invasion of

2   privacy interests that have been historically protected," namely an "individual's control of

3   information *concerning his or her person*." *Cook*, 2023 WL 5529772, at *4. Second, Plaintiffs'

4   cases involved collection and disclosure of *personally identifiable information* to third parties. *In*

5   *re Facebook*, 956 F.3d 589, 598 (9th Cir. 2020); *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th

6   1092, 1100 (9th Cir. 2022). Notably, in *In re Facebook*, plaintiffs alleged Facebook tracked

7   specific users, even when visiting third-party websites *after* logging out of Facebook, and then

8   compiled each user's browsing history with their "personal Facebook profile[]." 956 F.3d at 599.

9   Facebook created a "cradle-to-grave profile" that was "*personally identifiable*," such as name,

10  birth date, and location, along with other sensitive information such as religious and political

11  affiliations. *Id.* at 596–99 (emphasis added). By contrast, Plaintiffs do not allege logging into any

12  Microsoft Account when using Edge and thus must concede collected data was *not* personally

13  identifiable. Nor do they allege Microsoft shared personally identifiable information with third

14  parties. And in *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1040 (9th Cir. 2017),

15  plaintiffs would not have received *any* unsolicited text messages but for the defendant's actions.

16  Here, Plaintiffs do not allege they would have been spared *all* ads but for Microsoft's conduct,

17  and they fail to explain how receiving targeted ads (as opposed to non-targeted ads) injured

18  them—especially since they could have chosen not to receive targeted advertising by opting out.

19      **B.**    **Plaintiffs Fail to Plead Any Cognizable Expectation of Privacy.**

20      As shown below, Microsoft's Privacy Statement has consistently disclosed browsing data

21  collection and targeted advertising, thereby negating any purported privacy expectation to the

22  contrary. Plaintiffs challenge the Privacy Statement's enforceability as an "agreement." Opp. 2–

23  5. But courts impute notice of a publicly available privacy policy to users even absent evidence

24  the user "acquainted himself with the … policy" when evaluating whether the user's privacy

25  expectation is reasonable. *State v. Townsend*, 147 Wn.2d 666, 678 (2002). The relevant inquiry is

26  whether Plaintiffs had a *reasonable* privacy expectation when Microsoft's publicly available

27  Privacy Statement disclosed the very practices Plaintiffs complain about. The answer is no.

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:23-cv-01104-BJR) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Courts agree that privacy policies disclosing the challenged practices dispel a plaintiff's purported expectation that such practices would not occur even when the plaintiff alleges the policy "was not 'immediately apparent to users'" or "would only put [users] on notice 'if accessed and read.'" *In re Appl. of the U.S.*, 830 F. Supp. 2d 114, 136–37 (E.D. Va. 2011). In those instances, "whether the Privacy Policy binds [users] in contract, [is] an issue not presented." *Id.* Plaintiffs' cases about motions to compel arbitration are thus irrelevant. Opp. 4.

Nor can Plaintiffs avoid the Privacy Statement by characterizing it as a "labyrinth" or "not conspicuous." *Id.* at 2. This Court rejected a similar argument before, finding it "lacks merit" given plaintiffs' failure to "allege that they did not find these policies or otherwise lacked notice of them." *Gray v. Amazon.com, Inc.*, 2023 WL 1068513, *5 (W.D. Wash. 2023). The same is true here: Plaintiffs do not deny the Privacy Statement was publicly available and have not alleged they were unaware of it or denied the opportunity to review it. "[T]hat Plaintiffs concede that they did not read Defendant's terms does not preclude their application." *Del Vecchio v. Amazon.com Inc.*, 2011 WL 6325910, *4 (W.D. Wash. 2011). "[U]se of Defendant's site … serve[s] both as an acknowledgment that cookies were being received and an implied acceptance of that fact." *Id.* Plaintiffs' cases are inapposite because the parties disagreed if the policy disclosed or disclaimed the practice at issue. Opp. 3–4. There is no such ambiguity here.

Plaintiffs do not deny that the language they label as "statements 1 and 2" in the Privacy Statement expressly disclosed the practices at issue. *Id.* at 7. They question only whether Microsoft made these disclosures *before* September 2021. *Id.* at 7 n.5. The disclosures in effect in June 2021, when Plaintiffs allegedly began using Edge, are substantively the same:

- "The data we collect can include the following: … **Browse history**. Data about the webpages you visit. **Searches and commands**. Search queries and commands when you use Microsoft products with search …." Supp. Burnside Dec. Ex. A at 2.[2]
- "[T]he characters that you type into a Bing-powered experience (such as search and site suggestions in the Microsoft Edge browser) to conduct a search and what you click on will be sent to Microsoft." *Id.* at 29.

---

[2] The Court can—as is "routinely" done by "district courts in this circuit"—take judicial notice of the contents of webpages available through the Internet Archive's Wayback Machine because it is a source whose accuracy cannot reasonably be questioned. *Parziale v. HP, Inc*, 2020 WL 5798274, *3 (N.D. Cal. 2020) (collecting cases; taking judicial notice of webpages from Wayback Machine to examine historical disclosures made by defendant).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

- "Microsoft Edge[]… uses your search queries and browsing history to provide you with faster browsing and more relevant search recommendations,… You can turn off these features at any time in the browser settings." *Id.* at 33.

The Privacy Statement from June 2021 disclosed "targeted advertising" and how to opt out, too:

- "Microsoft uses the data we collect to provide you rich, interactive experiences. In particular, we use data to … [a]dvertise and market to you, which includes…targeted advertising." *Id.* at 3.

- "Microsoft uses cookies to collect data about your online activity and identify your interests so that we can provide advertising that is most relevant to you.… Some of the cookies we commonly use [include] … **MUID, MC1, and MSFPC**: Identifies unique web browsers visiting Microsoft sites. These cookies are used for advertising, site analytics, and other operational purposes." *Id.* at 8–9.

- "In the Microsoft privacy dashboard you can control the use of your browsing activity for personalized ads.… You may disable this browser setting in Microsoft Edge at any time to stop receiving personalized web experiences based on your browsing activity." *Id.* at 33.

These disclosures negate any reasonable privacy expectation to the contrary, as required to show standing. Plaintiffs' passing references to inPrivate browsing are irrelevant because they do not allege they used inPrivate browsing and fail to address the inPrivate disclosures Microsoft identified that also negate Plaintiffs' selective excerpting. *Compare* Opp. 1, 5–6; *with* Mot. 3–5.[3]

### C. Plaintiffs Fail to Plead Any Economic Injury.

Even if Microsoft benefited in some way from the non-personally identifiable information Plaintiffs allege Microsoft collected, "an allegation that [Microsoft] profited is not enough" to establish an economic injury-in-fact. *In re Google, Inc. Priv. Pol'y Litig.*, 2013 WL 6248499, *5–6 (N.D. Cal. 2013). The "plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of his own." *Id.* Plaintiffs insist they have pled economic injury because "Microsoft 'unjustly earn[s] substantial profits'" from its collection and use of the information. Opp. 11. Courts regularly reject these allegations as insufficient. *See, e.g.*, *In re Google*, 2013 WL 6248499, *5–6 (no economic injury based on allegations that collected information has value and defendant obtained information without compensating plaintiff); *Low*, 2011 WL 5509848, at *5 (same); *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, *4–5 (C.D. Cal. 2011) (same).

---

[3] Shah's and Wilkinson's claims also fail because they cannot expect privacy in their use of computers they do not own. Mot. 9 (collecting cases). Plaintiffs' attempt to distinguish Microsoft's cases is not meaningful. Opp. 12 n.10. One must have a privacy interest in the item searched to bring an invasion of privacy claim; these cases merely confirm no one has a reasonable privacy expectation when using computers admittedly owned by someone else. *Id.*

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:23-cv-01104-BJR) - 6

Plaintiffs cite *Ji v. Naver Corp.*, Opp. 11, but again, that case supports Microsoft. The plaintiffs in *Ji* "d[id] not allege they actually wanted or attempted to sell, or in fact sold, their information on any sort of market as required to plead this kind of injury." 2022 WL 4624898, *9 (N.D. Cal. 2022). The plaintiffs argued that "deprivation of a property interest in one's personal information is sufficient economic injury." *Id.* The court rejected this notion explaining "data privacy plaintiffs must allege the existence of a market for their data *and the impairment of the ability to participate in that market*." *Id.* (emphasis added). Even under *Ji*, Plaintiffs lack standing. They "do not allege they attempted to sell their personal information, that they would do so in the future, or that they were foreclosed from entering into a value for value transaction relating to their [information]." *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, *4 (N.D. Cal. 2013). Even assuming the information is personal property, "Plaintiffs have not alleged facts sufficient to show injury based on the purported diminution in value …." *Id.*

Plaintiffs again rely on *In re Facebook*, but plaintiffs there alleged Facebook *sold personally identifiable* profiles to advertisers to collect "over 90% of [Facebook's] revenue." 956 F.3d at 600. Plaintiffs do not allege Microsoft obtained their personally identifiable browsing history or sold it to third parties. Plaintiffs' other cases are also distinguishable. *Calhoun v. Google LLC* examined "statutory standing" and did not discuss Article III standing, particularly as applied post-*TransUnion*. 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021). The court in *Brown v. Google LLC* found the allegations sufficient because plaintiffs alleged Google previously paid for the kind of information collected, and plaintiffs knew other platforms that pay for such data, making plausible that plaintiffs would decide to sell their data. 2021 WL 6064009, *15 (N.D. Cal. 2021). Plaintiffs do not make any comparable allegations. They do not plead a concrete economic injury when their allegations rest solely on purported "dollars in a defendant's pocket" from collection (rather than sale) of data. *In re Google*, 2013 WL 6248499, at *5–6.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM

Because Plaintiffs cannot satisfy Article III, the Court need not reach the Complaint's deficiencies under Rule 12(b)(6). But Plaintiffs fail to state a claim for the same reasons: they

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:23-cv-01104-BJR) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

cannot plausibly plead causation or damage given the lack of a cognizable privacy interest or expectation. *Sanchez*, 39 F.4th at 561 (constitutional claim properly dismissed given absence of reasonable expectation of privacy); *Jones v. Ford Motor Co.*, --- F. 4th ---, 2023 WL 7097365, *3 (9th Cir. 2023) (WPA claim dismissed due to absence of injury beyond alleged "invasion of privacy"); *Del Vecchio*, 2011 WL 6325910, at *6–7 (dismissing browser-tracking claims due to lack of "plausible harm"). Each claim fails for other reasons too, as shown below.

      **A.**      **Plaintiffs' Federal and State Wiretapping Claims Fail.**

Plaintiffs' input of directions into Edge to facilitate their Internet activities does not qualify as contents of communication. Mot. 12–13. Plaintiffs respond Microsoft collects "the full URL" or certain "user identifiers," like cookies. Opp. 21–22. But neither qualifies as communication content. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014) (URLs); *Cook*, 2023 WL 5529772, at *9 (URLs); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (user identifiers). Plaintiffs also identify contents viewed on retail websites. Opp. 22. But they cite no authority suggesting content created by a website operator—such as "product pages" publicly available to anyone with a web browser—is an intercepted communication.

As explained above, Plaintiffs' reliance on *In re Facebook* is misplaced. Their remaining cases are distinguishable. In *United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008), the court pondered in a footnote whether disclosure of a URL containing "sensitive information" "might be more constitutionally problematic" than IP addresses in a Fourth Amendment case. But the Ninth Circuit later said that footnote was "largely irrelevant" to wiretapping law. *Zynga*, 750 F.3d at 1108. In *Brown v. Google*, 2023 WL 5029899, *15 (N.D. Cal. 2023), the court noted that much of the alleged search information Google collected was unactionable "record" data under *Zynga*. In *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022), the court considered Google's use and sale to third parties of a variety of user data in its "real-time bidding" system for targeted ads, including "details about the content within the site" the user was visiting and the "substance" of communications. Plaintiffs rely on cases involving "detailed URLs" disclosing substance, but fail to allege any detailed URLs in their Edge use.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

In any event, Plaintiffs fail to allege interception. They claim they made the showing by simply saying Microsoft uses Edge to eavesdrop "while these electronic communications were and are in transit." Opp. 24. These are conclusory allegations that courts reject. *See Rodriguez v. Google, LLC*, 2022 WL 214552, *2 (N.D. Cal. 2022) ("[u]sing the word 'intercept' repeatedly is simply not enough"); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, *7 (S.D. Cal. 2020). The cases Plaintiffs cite are inapposite: they involved allegations that an unknown entity secretly recorded online chats. By contrast, Plaintiffs intentionally typed information into Microsoft's Edge browser to navigate the Internet and now complain that Microsoft saw what they typed. There is no "factual" dispute, *see* Opp. 23–24; Plaintiffs do not plausibly allege interception.

**B.    The CIPA and WPA Claims Fail for Other Claim-Specific Reasons.**

**CIPA § 631(a):** Plaintiffs fail to allege intent. Mot. 14–15. Generalized pleading of intent is insufficient, and Plaintiffs ignore California law requiring more in wiretapping cases. *People v. Super. Ct.*, 70 Cal. 2d 123, 134 (1969). *Lopez v. Apple, Inc.* is inapposite, because Plaintiffs do not allege comparable facts that Microsoft knew of a "defect" and did not fix it. 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021). *Doe v. Meta Platforms, Inc*. is distinguishable, because plaintiffs there alleged misrepresentations by Facebook. 2023 WL 5837443, *3 (N.D. Cal. 2023).

**CIPA § 632(a):** Online communications are not "confidential" under California law. Mot. 25–26. Plaintiffs rely on "Ninth Circuit law" unrelated to Section 632. *In re Facebook*, 956 F.3d at 603. Under Section 632, online communications are not "confidential" because they—by nature—are recorded in a readily shareable format. *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (unreasonable "to expect [online] communications to be confidential" because they are "easily … shared"); *Swarts v. Home Depot, Inc.*, 2023 WL 5615453, *8 (N.D. Cal. 2023).[4]

**WPA**: This claim fails for multiple other reasons. *First*, Plaintiffs did not allege "confidentiality" under Washington law. Mot. 16–17. Plaintiffs cite inapplicable federal law, i.e., *In re Facebook*, and also misattribute a quote to *State v. Riley*, 121 Wn.2d 22, 33 (1993). That

---

[4] The Section 632(a) claim also fails because Edge is not a "recording device." Mot. 26. Plaintiffs claim "device" should be construed the same as under the federal wiretapping law. Opp. 26 n.30. But Section 632(a) requires a "device" and software is not a "device" under California law. Mot. 26. Plaintiffs' interpretation would require construing "device" differently under Section 637.7 and Section 632 of the same statute.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

case supports Microsoft because the "ordinary and usual meaning" applies to "private communications," *id.*, which bars the presence of third parties. Microsoft's involvement in the communication defeats the claim that it was "private." Mot. 17. *Second*, the court in *Cousineau v. Microsoft* ruled Microsoft was not liable for allegedly intercepting communications directed at Microsoft. 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012). The same is true here, because Plaintiffs' instructions to Edge for navigating the Internet are communications directed at Microsoft. *Third*, Plaintiffs fail to allege a "device" under the WPA. They do not cite any case recognizing browser *software* as a device and rely instead on cases involving *physical* devices. And they do not allege injury beyond the mere assertion of "invasion of privacy" that the Ninth Circuit recently held is insufficient under the WPA. *Jones*, 2023 WL 7097365, at *3.

### C.    Plaintiffs Concede They Have Not Stated a Claim Under the CFAA.

Plaintiffs did not respond to Microsoft's argument that they failed to allege a violation of the CFAA, Mot. 18–19, thereby conceding the claim has no merit. *See Thomas v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 2611889, *2 (W.D. Wash. 2023).

### D.    Plaintiffs' Constitutional and Common-Law Privacy Claims Fail.

Microsoft sought dismissal of Plaintiffs' constitutional privacy claim, Mot. 19, which Plaintiffs abandon by failing to address it in their response. The common-law claims also fail.

**No intentional intrusion:** Plaintiffs voluntarily provided their information into Edge, and Microsoft published, in multiple places, a Privacy Statement explaining what data it would collect. The Privacy Statement negates any inference of intent to intrude on users' privacy. *See Gray*, 2023 WL 1068513, at *8.

Plaintiffs minimize *Smith v. Maryland* as an old case about "non-content addressing information," Opp. 12, but *Smith* is directly on point. The Supreme Court held that an individual has no reasonable privacy expectation over a log of phone numbers dialed from his home when he "voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business." 442 U.S. 735, 744 (1979). Just as in *Smith*, Plaintiffs voluntarily conveyed (and Microsoft received in the ordinary course of

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

business) browsing information in Plaintiffs' use of Edge. Plaintiffs rely on a concurring opinion

in a GPS surveillance case—not a "web browsing" case as they suggest—in which a justice

asked whether *Smith* should be reconsidered. *United States v. Jones*, 565 U.S. 400, 417 (2012).[5]

But even that justice found it "unnecessary," and *Smith* remains good law. *Id.* at 418. In *Sanchez*,

the Ninth Circuit applied *Smith*, finding "little difficulty" in concluding that plaintiff "knowingly

… disclosed location data to the e-scooter operators," and "[h]aving 'voluntarily conveyed' his

location to the operator 'in the ordinary course of business," he "cannot assert a reasonable

expectation of privacy." 39 F.4th at 559. "Rather, because [the] data is knowingly disclosed as a

central feature of his transaction with a third party—much like the route of a taxi ride is

disclosed to a cab driver—the situation fits comfortably within the ambit of *Smith*[.]" *Id.*

**Not highly offensive:** Plaintiffs cannot show that Microsoft's conduct is "highly

offensive" because courts do not even find a privacy invasion in cases where browsing data is

not personally identifiable. *Supra* § I.A. Plaintiffs' cases are inapposite. In the Google cases,

plaintiffs alleged conduct contrary to Google policies. *Rodriguez v. Google*, 2021 WL 2026726,

at *8 (N.D. Cal. 2021); *Calhoun*, 526 F. Supp. 3d at 621. Here, Plaintiffs do not allege Microsoft

violated its Privacy Statement; Microsoft *disclosed* the very practices Plaintiffs challenge. *See*

*supra* § I.B. And Plaintiffs fail to address Microsoft's cases in which courts dismissed privacy

claims based on the collection of similar data in the absence of allegations that the collection

violated published policies. Mot. 20–21 (citing *Folgelstrom*, *Nickelodeon*).

Plaintiffs' other arguments also fail. Their broad line-drawing between behavior in public

as compared to at home does not overcome the fact that they do not have a reasonable

expectation of privacy in the specific data at issue here. Plaintiffs' argument about Edge

"follow[ing] shoppers" beyond "its *own* 'store'" falls short because users are free to browse the

Internet with other browsers—users *choose* to take Edge with them "store to store." Opp. 13.[6]

---

[5] Plaintiffs' other cases are distinguishable and involved far more sensitive information than is at issue here. One involved cell-site records akin to "GPS monitoring." *Carpenter v. United States*, 138 S. Ct. 2206, 2216–17 (2018). Another involved seizure of a suspect's cell phone, which carries "a cache of sensitive personal information" including calls and text messages. *Riley v. California*, 573 U.S. 373, 396–97 (2014).

[6] And Plaintiffs do not deny that they could clear their browsing data through their Edge Settings. *See* edge://settings/privacy; Burnside Decl. Ex. D at 2-3.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs' analogy to "extensive monitoring of an individual's movements in the physical world" fails given that physical monitoring of an individual depends on identifying and then following an identifiable individual—which Plaintiffs do not allege. *Id.*

### E.   Plaintiffs' Larceny and Conversion Allegations Fail to State a Claim.

**California larceny:** Plaintiffs' browsing data does not constitute "property" under California law. Mot. 21. In response, Plaintiffs refer to distinguishable case law, namely *In re Facebook*, cited in their discussion regarding economic injury under Article III. Opp. 14. Plaintiffs disregard *Low*, *Gonzalez*, and *In re iPhone*, based on their observation that they predate *In re Facebook*. But courts *continue* to follow these cases post-*Facebook*. *See, e.g.*, *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1144 (E.D. Cal. 2021); *D'Angelo v. JCPenney*, 2023 WL 7006793, *5 (S.D. Cal. 2023); *Taylor v. Google LLC*, 2021 WL 4503459, *4 (N.D. Cal. 2021).

**California conversion:** This claim cannot proceed for the independent reason that Plaintiffs fail to allege damages. In response, Plaintiffs restate their conclusory allegations that they "cannot bring their private data … to market" based on Microsoft's collection. Opp. 15. But Plaintiffs do not allege any *facts* to explain how Microsoft's conduct prevented them from selling their data to third parties—even accepting their conclusory allegation a market exists for that data. As explained in *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 990 (N.D. Cal. 2015), a plaintiff must allege injury based on the "diminish[ment]" of value, not merely through general allegations that the property has value in the abstract. *Supra* § I.C (no economic injury).

**Washington conversion:** Plaintiffs do not allege they lost "possession" of the information Microsoft collected as required under Washington law. Mot. 22. Plaintiffs cite no law supporting their position. Instead, they ask the Court to either "ignore[]" *Calence, LLC v. Dimension Data Holdings*, 2007 WL 1526349, *7 (W.D. Wash. 2007), or certify the question it answered to the Washington Supreme Court, Opp. 15 & n.15. The Court should deny both requests. *Calence* applied settled Washington law requiring a plaintiff to prove deprivation of "possession"—not mere concurrent use. 2007 WL 1526349, at *7. *Calence* has also been cited favorably by a Washington Court of Appeals. *Corbis Corp. v. Stone*, 167 Wn. App. 1019, *15–

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:23-cv-01104-BJR) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

16 (2012) (unpublished). In *Corbis*, the court recognized that the weight of authority holds that "possession of a copy does not deprive the owner of use of the property." *Id.*

## F.    Plaintiffs' State-Law Consumer Protection Claims Fail.

**California UCL:** The UCL requires a loss of "money or property" distinct from the showing of Article III injury. Mot. 23–24. Plaintiffs expect the Court to ignore Microsoft's cases (including *Campbell*, *Gonzales*, *Facebook Privacy*, *Katz-Lacabe*, and *Archer*) because they predate a purported sea change in *In re Facebook*. Opp. 16. But *Facebook* did not overrule Microsoft's cases or recognize all information loss as economic injury; it involved the compilation of personally identifiable browsing history, which is not at issue here.[7]

Plaintiffs also cite allegations that do not fit the claim. They cannot invoke a "benefit of their bargain" theory, Opp. 17, because they do not allege they entered into a bargain with Microsoft. Nor do Plaintiffs explain how "they are now precluded from selling their data…." *Id.* As explained above, Plaintiffs fail to make plausible any diminution-in-value theory solely based on Microsoft's possession of the same information. *Supra* § I.C.[8]

**Washington CPA:** The CPA requires an injury to "business or property." Mot. 24. In response, Plaintiffs cite the same deficient allegations referenced above in support of their UCL claim. They ignore the Washington cases cited in the Motion explaining that informational disclosure is insufficient to state a claim under the CPA. Mot. 24 (citing *Buckley* and *Hoang*). The standing allegations fall short for the same reasons as under Article III and the UCL.[9]

## G.    Plaintiffs Fail to State Unjust Enrichment or Restitution Claims.

Plaintiffs' unjust enrichment claim is inadequately pled. *First*, Plaintiffs have not pled

---

[7] Plaintiffs' other cases are also distinguishable. *Klein v. Facebook, Inc.*, examined whether plaintiff had alleged "causal antitrust injury," not a UCL injury. 580 F. Supp. 3d 743, 802 (N.D. Cal. 2022). *Kwikset Corp. v. Super. Ct.*, involved products bought based on misrepresentations. 51 Cal. 4th 310, 330 (2011). In *Griffey v. Magellan Health Inc.* involved paying for "extra data security" to remedy a data breach. 2022 WL 1811165, *10 (D. Ariz. 2022). This case is about free browser software; Plaintiffs paid Microsoft nothing.

[8] The UCL claim independently fails for other reasons. Mot. 25–26. Plaintiffs agree they cannot satisfy the "unlawful" prong if their other claims fail. Opp. 18. They cannot satisfy the "unfair" prong because they rely on the same theory and facts as the doomed predicate claims. *Hammerling v. Google LLC*, 2022 WL 17365255, *12 (N.D. Cal. 2022) (UCL claim for "unfairness" cannot survive if overlapping claims are dismissed).

[9] The CPA claim further fails because Plaintiffs did not allege causation given the disclosures in the Privacy Statements. Mot. 25. Plaintiffs also failed to allege that the case falls within the realm of "trade or commerce" under the CPA. The court in *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1254 (W.D. Wash. 2007), rejected a similar argument where plaintiffs sued based on defendant's collection of data and providing it free to consumers.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

that Microsoft "received a benefit" from their data. Mot. 26–27. They point to allegations that Microsoft is "able to" determine their browsing activity based on its ability to "associate the collected data." Opp. 9. But, these allegations do not establish economic harm. *See supra* § I.C. Plaintiffs also fail to distinguish Microsoft's cases, which require an "expense" from a "tangible economic loss" or "depriv[ation]" of use of property. Opp. 19 n.19.

*Second*, Plaintiffs have no allegations regarding the "value" of their data. Mot. 27. They fail to distinguish *Moore v. Centrelake Med. Grp., Inc.*, where the court "conclude[d] appellants failed to adequately plead their lost-value-of-PII theory" because it is not enough that individuals allege information was "stolen and disseminated, and that a market for it existed." 83 Cal. App. 5th 515, 538 (2022). The court distinguished the same cases Plaintiffs cite. *Id.* at 541 & n.13 ("*Calhoun* addressed a loss of *privacy*—as opposed to a loss of property value").

*Third*, Plaintiffs acknowledge equitable relief is available only if they lack an adequate remedy at law. *See* Mot. 27. They claim they can "plead in the alternative." Opp. 20–21. But the Complaint did not include any alternative pleading under Rule 8(a)(3) that a legal remedy would be insufficient. *See* Compl. ¶¶ 351–57. That is a necessary condition to satisfy *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020). *See Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*, 2022 WL 1665220, *8 (E.D. Cal. 2022) (collecting cases).[10]

### III.    CONCLUSION

The Court should dismiss the Complaint for lack of Article III standing, or in the alternative, for failure to state a claim.

DATED this 3rd day of November, 2023.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Microsoft Corporation*

By: /s/ Fred B. Burnside
      Stephen M. Rummage, WSBA #11168
      Fred B. Burnside, WSBA #32491
      Jaime Drozd, WSBA #35742
      Xiang Li, WSBA #52306
      Caleah Whitten, WSBA #60209

---

[10] The Court should strike Plaintiffs' request for punitive damages, Mot. 27–28 n.8, because they fail to dispute and therefore concede the issue.

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:23-cv-01104-BJR) - 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
Email: stephenrummage@dwt.com
Email: fredburnside@dwt.com
Email: jaimedrozd@dwt.com
Email: xiangli@dwt.com
Email: caleahwhitten@dwt.com

James Moon, *pro hac vice*
865 South Figueroa Street, Ste. 2400
Los Angeles, CA 90017
Email: jamesmoon@dwt.com

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax